David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
Aaron R. Goldstein, Bar No. 239423
AGoldstein@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Charles C. Sipos, Bar No. 348801
CSipos@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.3983
Facsimile: 206.359.4983

Attorneys for Defendant
GENERAL MILLS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

KEITH CARROLL, and REBEKA RODRIGUEZ, individually and on behalf of others similarly situated,

Plaintiffs,

v.

GENERAL MILLS, INC., a Delaware corporation d/b/a BETTYCROCKER.COM; and DOES 1 through 10, inclusive

Defendant.

Case No. 2:23-cv-01746-DSF-MRW

**DEFENDANT GENERAL MILLS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Date:        June 26, 2023
Time:        1:30 p.m.
Courtroom:   7D
Judge:       Hon. Dale S. Fischer

-1-

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 26, 2023, at 1:30 p.m. in Courtroom 7D of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, defendant General Mills, Inc. will, and hereby does, move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing with prejudice this case brought by plaintiffs Keith Carroll, Rebeka Rodriguez, and the putative national class.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other and further matters as the Court may consider.

This motion is made following the conference of counsel which took place on May 18, 2023, in accordance with Civil Local Rule 7-3. The parties were unsuccessful in their attempt to resolve their dispute and now require the Court's assistance.

DATED:  May 24, 2023          **PERKINS COIE LLP**

By: */s/ Aaron R. Goldstein*
Aaron R. Goldstein 239423
AGoldstein@perkinscoie.com

Attorneys for Defendant
GENERAL MILLS, INC.

-2-

162172173.5

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   SUMMARY OF FACTUAL ALLEGATIONS ...............................3

III.  LEGAL STANDARD .......................................................................4

IV.   ARGUMENT ....................................................................................5

    A.    Plaintiffs' Complaint Should be Dismissed Because Plaintiffs Have Failed to State a Claim for A Violation of The VPPA ................5

        1.    General Mills is not a video tape service provider. ....................5

        2.    Plaintiffs are not "consumers" under the VPPA. ........................9

        3.    General Mills did not "knowingly disclose" Plaintiffs' Personally Identifiable Information. ...........................................13

        4.    General Mills' disclosure of information was "incident to the ordinary course of business." ................................................16

    B.    Plaintiffs' Reading of the VPPA is Unconstitutional. ........................18

    C.    Plaintiffs' Complaint Should Be Dismissed Without Leave To Amend ...............................................................................................19

V.    CONCLUSION ...............................................................................20

NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ambrose v. Bos. Globe Media Partners LLC*,
  No. 21-10810, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ............................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................... 4, 5, 6

*Austin-Spearman v. AMC Network Ent. LLC*,
  98 F. Supp. 3d 662 (S.D.N.Y. 2015) .................................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 4

*Cantu v. Tapestry, Inc.*,
  3:22-cv-01974-BAS-DDL (S.D. Cal. Dec. 13, 2022) ............................ 3

*Cantu v. WW.COM LLC*,
  2:22-cv-07977 (C.D. Cal Nov. 1, 2022) ................................................ 3

*Cappello v. Walmart Inc.*,
  No. 18-cv-06678S, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ......... 8

*Carroll v. Chick-Fil-A, Inc.*,
  4:23-cv-00314-YGR (N.D. Cal. Jan. 22, 2023) ..................................... 3

*Carroll v. J. M. Smucker Co.*,
  3:22-cv-08952-WHA (N.D. Cal. Dec. 19, 2022) .................................... 3

*Carroll v. Procter & Gamble Co.*,
  3:23-cv-00010-MMA-MDD (S.D. Cal. Jan. 3, 2023) ............................ 3

*Carroll v. Vida Shoes Int'l, Inc.*,
  23STCV02457 (Cal. Super. Ct. Feb. 3, 2023) ...................................... 3

*Carter v. Scripps Networks LLC*,
  No. 22-cv-2031, 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023)
  ...................................................................................... 9, 10, 11, 13

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) ........................................................................... 18

162172173.5

*Czarnionka v. Epoch Times Ass'n*,
   No. 22 Civ. 6348, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ..................... 7

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
   485 U.S. 568 (1988) ......................................................................... 19

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ...................................................... 14, 15

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) ............................................. 11, 12, 13

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ........................................................... 9

*Hooper v. California*,
   155 U.S. 648 (1895) ......................................................................... 19

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) .............................................. 7

*In re Hulu Priv. Litig.*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015) ............................................. 15

*In re Hulu Priv. Litig.*,
   No. C 11-03764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .................... 8, 9

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ............................................................... 2

*In re Nickelodeon Consumer Priv. Litig.*,
   Nos. 12-07829, 13-03755, 13-03729, 13-03757, 13-03731, 13-03756, 2014 WL 3012873 (D. N.J. July 2, 2014) .............................. 16

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................................... 6, 7

*Italian Colors Rest. v. Becerra*,
   878 F.3d 1165 (9th Cir. 2018) ......................................................... 18

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) ........................................................... 19

162172173.5

*Lebakken v. WEBMD, LLC*,
    No. 1:22-CV-644, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ...................... 8

*Louth v. NFL Enters. LLC*,
    No. 21-cv-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022)............................ 8

*Martin v. Meredith Corp.*,
    No. 22cv4776, 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023),
    *appeal filed*, No. 23-412 (2d Cir. Mar. 17, 2023) ............................... 15

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ................................................................. 5

*Mollett v. Netflix, Inc.*,
    No. 11-CV-01629, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012).................... 16

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017)........................................................... 11, 12

*Polich v. Burlington N., Inc.*,
    942 F.2d 1467 (9th Cir.1991) ................................................................. 19

*Rodriguez v. The Pampered Chef, Ltd.*,
    2:23-cv-02920-SVW-JPR (C.D. Cal. Apr. 18, 2023) ........................................ 3

*Rodriguez v. Sony Comput. Ent. Am.*,
    LLC, 801 F.3d 1045 (9th Cir. 2015) ..................................................... 17

*Rodriguez v. Transform SR Brands LLC*,
    3:23-cv-00585-L-AHG (S.D. Cal. Mar. 31, 2023)............................................ 3

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ........................................................................... 18

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998)................................................................ 5

*Sterk v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) .............................................................. 17

*Tawam v. Feld Entertainment, Inc.*,
    3:23-cv-00357-WQH-JLB (S.D. Cal. Jan. 24, 2023)........................................ 3

-iv-

162172173.5

*United States v. Pacheco*,
    977 F.3d 764 (9th Cir. 2020) ................................................................................. 9

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022) ............................................................... 15

STATUTES

18 U.S.C. § 2710(a)(1) ........................................................................................... 9

18 U.S.C. § 2710(a)(3) ......................................................................................... 14

18 U.S.C. § 2710(a)(4) ...................................................................................... 5, 6

18 U.S.C. § 2710(b)(1) ............................................................................... 5, 11, 14

18 U.S.C. § 2710(b)(2) ........................................................................................... 5

18 U.S.C. § 2710(b)(2)(E) ................................................................................... 16

18 U.S.C. § 2710(c)(4) ......................................................................................... 18

RULES

Fed. R. Civ. P. 8(a)(2) ............................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 4, 6

OTHER AUTHORITIES

S. REP. NO. 100-599 (1988), *as reprinted in* 1988 U.S.C.C.A.N. ..................... 10, 17

NOTICE OF MOTION AND MOTION TO DISMISS

162172173.5

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant General Mills, Inc. ("General Mills") hereby submits this memorandum of points and authorities in support of its Motion to Dismiss the First Amended Class Action Complaint for Violation of the Video Protection Privacy Act ("Complaint") of plaintiffs Keith Carroll and Rebeka Rodriguez ("Plaintiffs").

## I.   INTRODUCTION

Little did Judge Robert Bork know when he rented "The Man Who Knew Too Much" and other titles at his neighborhood Potomac Video store that his desire for quiet home entertainment would spawn legislation that would, some 45 years later, become recklessly invoked in dozens of class action cases now clogging the California courts. After Judge Bork's rental history was published, Congress passed the Video Protection Privacy Act ("VPPA") which creates liability if a "video tape service provider," "knowingly" discloses "personally identifiable information concerning any customer" (or "PII") in circumstances not "incident to the normal course of business." Now, after brick and mortar video stores have vanished, the VPPA's very specific requirements have resulted in its limited application to businesses whose primary mission is to deliver video content to purchasers, renters and subscribers for a fee. The language of the statute, congressional intent, and common sense make clear that the VPPA does not apply to the claims asserted here against a producer and seller of food products whose websites provide short (generally 50 seconds) free promotional videos for consumers as a part of its efforts to market food.

Plaintiffs' Complaint should be dismissed because they fail to allege the essential elements of a VPPA claim. Specifically, Plaintiffs do not and cannot allege:

(1) that General Mills is a "video tape service provider" when it is a producer and seller of food and neither sells videos nor is engaged in the practice of producing or marketing videos;

(2) that Plaintiffs are "consumers" or "subscribers" under the VPPA when the most they allege is that they purchased General Mills food products and did not purchase any General Mills videos and are not obligated to view or maintain the websites at issue;

(3) that General Mills "knowingly" disclosed allegedly PII, when the allegations are unclear if the video viewing history was transmitted anywhere and General Mills itself does not control the Facebook and Google pixels that allegedly contain such information;

(4) that any disclosure of information was not "incident to the ordinary course of business," when General Mills is engaged in production and marketing its foods and the use of Facebook and Google pixels is a logical incidental component of its business.

Finally, Plaintiffs' construction of the VPPA is so impermissibly broad as to render the statute unconstitutional.

In short, case law makes clear that a claim under the VPPA must allege a disclosure "akin" to Judge Bork's leaked list of video rental films—a disclosure by a video tape service provider that connects an identified consumer with their specific video-viewing history. Here, Plaintiffs instead allege that Facebook and Google pixels on General Mills' website somehow disclose to Facebook and Google the videos they have viewed and their associated PII. This is a far cry from publishing a list of specific films rented by a consumer at a video store. As one court has made clear "[e]very step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016). The VPPA cannot reasonably be interpreted to prevent the use of cookies and tracking pixels on retail websites that embed any videos. *See Id*. at 290 ("[T]he import of the plaintiffs' position seems to be that the use of third-party cookies on any website that streams video content is presumptively illegal. We do not think the Video Privacy Protection Act sweeps quite so broadly.")

For all of these reasons, the complaint fails to state a VPPA violation and General Mills asks the Court to dismiss the Complaint in its entirety with prejudice, and not permit repleading, which would be futile.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

Most of the allegations in Plaintiffs' complaint could apply to almost any company that hosts a video on its website. It is therefore unsurprising that Plaintiffs' counsel has filed over forty other cases in federal and state courts in California asserting essentially the same allegations with minimal revisions.[1]

Plaintiffs are self-proclaimed "individuals and consumer advocate[s]" who claim to frequent websites in an effort to weed out purported privacy violations under the guise of advancing public interests. (Complaint ¶¶ 6-7, 50.) Plaintiffs claim to be "consumers" under the VPPA because they "have purchased and eaten [General Mills'] products before" and purportedly downloaded a General Mills smartphone application, at some unspecified time, on their mobile device. (Complaint ¶¶ 48-49.) Plaintiffs allege that General Mills "owns, operates, and/or controls a variety of websites," including sites for its Betty Crocker (https://www.bettycrocker.com) and General Mills Convenience & Food Service (https://www.generalmillscf.com) brands. They allege General Mills' business plan "involves increasing its brand presence via the use of videos" hosted on those websites. (Complaint ¶¶ 8, 18.) Plaintiffs' allege that this fact alone makes General Mills a "video tape service provider" for purposes of the VPPA. (Complaint ¶¶ 18, 40, 45-46.)

---

[1] *See, e.g., Rodriguez v. The Pampered Chef, Ltd.*, 2:23-cv-02920-SVW-JPR (C.D. Cal. Apr. 18, 2023); *Rodriguez v. Transform SR Brands LLC*, 3:23-cv-00585-L-AHG (S.D. Cal. Mar. 31, 2023); *Carroll v. Vida Shoes Int'l, Inc.*, 23STCV02457 (Cal. Super. Ct. Feb. 3, 2023); *Tawam v. Feld Entertainment, Inc.*, 3:23-cv-00357-WQH-JLB (S.D. Cal. Jan. 24, 2023); *Carroll v. Chick-Fil-A, Inc.*, 4:23-cv-00314-YGR (N.D. Cal. Jan. 22, 2023); *Carroll v. Procter & Gamble Co.*, 3:23-cv-00010-MMA-MDD (S.D. Cal. Jan. 3, 2023); *Carroll v. J. M. Smucker Co.*, 3:22-cv-08952-WHA (N.D. Cal. Dec. 19, 2022); *Cantu v. Tapestry, Inc.*, 3:22-cv-01974-BAS-DDL (S.D. Cal. Dec. 13, 2022); *Cantu v. WW.COM LLC*, 2:22-cv-07977 (C.D. Cal Nov. 1, 2022).

-3-

1        Plaintiffs allege that they visited the General Mills websites with the intent to

2  enforce the VPPA, but also to learn about General Mills products. (Complaint ¶ 50.)

3  While there, they viewed videos on the websites. (Complaint ¶¶ 6-7, 34, 44.) A visit

4  to the websites identified shows that these videos are short, instructional, or

5  informational, each in general lasting about 60 seconds. *See, e.g.,* How to Make

6  Cornbread Video at https://www.bettycrocker.com/videos/cornbread or Easter Side

7  Dish Idea at https://www.bettycrocker.com/videos/videolibrary/side-dishes/green-

8  bean-casserole. Plaintiffs then allege that cookies on their web browser then disclosed

9  to Facebook and Google tracking pixels the video's content, title, and location, along

10  with some form of unspecified PII. (Complaint ¶¶ 34, 44, 52-53, 65.) Plaintiffs allege

11  this shows a "knowing disclosure" of their PII in violation of the VPPA. (Complaint

12  ¶¶ 31-32, 65.) Plaintiffs do not allege that General Mills disclosed that they each

13  actually viewed or interacted with the video, as opposed to simply visiting a page

14  with video content. Plaintiffs purport to represent themselves and a putative national

15  class of others who visited these sites. (Complaint ¶¶ 56-57.)

16                 **III.   LEGAL STANDARD**

17        Under Rule 12(b)(6), a complaint must be dismissed if it fails to set forth

18  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

19  *Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20  The pleading standard "demands more than an unadorned, the-defendant-unlawfully-

21  harmed-me accusation" and more than "labels and conclusions." *Iqbal*, 556 U.S. at

22  678 (citation omitted). A "formulaic recitation of the elements of a cause of action"

23  simply will not do. *Twombly*, 550 U.S. at 555. Nor is it enough for a plaintiff to allege

24  facts "merely consistent with" liability or showing only that entitlement to relief is

25  possible. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The factual

26  allegations "must be enough to raise a right to relief above the speculative level."

27  *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court

28  to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Further, the Court need not accept allegations contradicted by materials cited in the complaint or subject to judicial notice. *See Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295–96 (9th Cir. 1998).

## IV.    ARGUMENT

**A.    Plaintiffs' Complaint Should be Dismissed Because Plaintiffs Have Failed to State a Claim for A Violation of The VPPA.**

Taking all well-pleaded factual allegations in the Complaint as true, Plaintiffs fail to plausibly state a claim for violation of the VPPA.

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . . ." 18 U.S.C. § 2710(b)(1). In order to plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly and without consent, and (4) the disclosure was not authorized by section 2710(b)(2). *Mollett v. Netflix, Inc*., 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiffs seek an unprecedented extension of this narrow statute to apply to them but fail to allege these critical elements.

### 1.    General Mills is not a video tape service provider.

Plaintiffs fail to state a VPPA claim because General Mills is not a video tape service provider. The VPPA's scope is limited to disclosures by a "video tape service provider," defined as an entity "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

Plaintiffs do not allege that General Mills sells video material but, rather, alleges that "[p]art of Defendant's business involves increasing its brand presence via the use of videos" and that General Mills' websites "[deliver] embedded and

-5-

hosted video content" toward this end. (Complaint ¶¶ 18, 40.) Plaintiffs claim that General Mills is a video service provider because there are videos on its websites. (Complaint ¶¶ 45, 60 (quoting 18 U.S.C. § 2710(a)(4)). Plaintiffs' assertion that these bare allegations show that General Mills is a video service provider are nothing more than a legal conclusion that carries no weight at the Rule 12(b)(6) stage. *Iqbal*, 556 U.S. at 678. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Indeed, existing precedent makes clear that such allegations are insufficient. In a widely cited decision, the Central District of California provided a framework for evaluating the scope of the definition of a "video tape service provider" under the VPPA in the Internet age. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221–23 (C.D. Cal. 2017). The court declared that the word "business" in the phrase "*engaged in the business*" of delivery of video content "connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." *Id*. at 1221 (citations omitted). Thus, while "Congress intended to cover more than just the local video rental store," it could not have intended the definition to extend to defendants whose products are not "substantially involved in the conveyance of video content to consumers" and "significantly tailored to serve that purpose." *Id*.

By way of example, the court in *Vizio* described a letter carrier delivering a package containing a video, who is "obviously 'delivering' a video tape to a consumer" but "could not be characterized as 'engaged *in the business*' of delivering video content because her job responsibilities are in no way tailored to delivering packages that contain videotapes as opposed to any other package." *Id*. at 1221. Likewise, "developers of many other products or services that might be peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id*. at 1221–22. These other products and services "are far too peripherally or passively involved in the delivery of video

NOTICE OF MOTION AND MOTION TO DISMISS

content to reasonably constitute 'the business' of delivering video content" under the VPPA's definition. *Id*. at 1222.

Plaintiffs' complaint does not plausibly allege that General Mills, a company manufacturing and selling cereals, yogurts, cake mixes, dog food and other products, is "engaged in the business" of renting, selling, or delivering audio visual materials, as the VPPA requires. Nowhere do Plaintiffs allege that the focus of General Mills' work—its "particular field of endeavor"—is delivering video content or that its products are substantially involved in the conveyance of video content, much less tailored to that purpose. *Id*. at 1221. General Mills' income comes from making and selling food, not videos. Indeed, the General Mills websites, which Plaintiffs incorporate by reference, provide no indication whatsoever that General Mills is anything other than a consumer goods company selling food products. *Contra In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (*citing Vizio*, 238 F. Supp. 3d at 1221) (finding plausible allegations that Facebook's business is "significantly tailored to serve th[e] purpose" of conveying video content to users, because Facebook "'regularly delivers' video content to users and maintains a cache of videos and visual materials, including from content providers like Netflix, for their delivery to users"). The Complaint fails to allege facts demonstrating General Mills is anything other than peripherally involved in video delivery.

Plaintiffs' Complaint cites a host of non-binding out of circuit decisions in an effort to stretch the definition of a video tape service provider under the VPPA to all "commercial website owners/operators," including, in the present case, a consumer goods company selling food products. (Complaint ¶ 45.) Unlike General Mills, however, the defendants in each of those cases were either engaged in *the media business* or *actually selling video media. See Czarnionka v. Epoch Times Ass'n*, No. 22 Civ. 6348, 2022 WL 17069810, at *1, *4 (S.D.N.Y. Nov. 17, 2022) (defendant is an "international newspaper and media company" in the business of "news programs,

-7-

television shows, documentaries, movies, and other audiovisual content" which required users to enter "their name, email address, and billing information" to view "Defendants video content" thus creating a paid for subscription relationship with its visitors); *Lebakken v. WEBMD, LLC*, No. 1:22-CV-644, 2022 WL 16716151, at *1, *3 n.2 (N.D. Ga. Nov. 4, 2022) (defendant is a provider of "online health information and medical news . . . through videos," that did not "specifically argue . . . that it is not a video tape service provider"); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-10810, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022) (defendant is a "multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms" that "creates, hosts, and disseminates hundreds, if not thousands, of videos" on its website); *Louth v. NFL Enters. LLC*, No. 21-cv-00405, 2022 WL 4130866, at *1 (D.R.I. Sept. 12, 2022) (defendant "owns and operates a mobile application . . . which disseminates 'live local and primetime games, exciting videos and highlights, and replays of every game'" - thus, a core function of the app, is viewing video content); *Cappello v. Walmart Inc.*, No. 18-cv-06678S, 2019 WL 11687705, at *1 (N.D. Cal. Apr. 5, 2019) (defendant "operates the retail websites walmart.com and mobile.walmart.com . . . where it sells a variety of consumer goods, including DVDs, Blu-ray Discs, video games, and other video media" - thus, Walmart functions like Blockbuster, Netflix, and other providers of video content who sells videos to consumers); *In re Hulu Priv. Litig.*, No. C 11-03764, 2012 WL 3282960, at *2 (N.D. Cal. Aug. 10, 2012) (defendant "operates a website called Hulu.com that provides video content," including "news, entertainment, educational, and general interest programs"—Hulu is like Netflix in that it provides consumers the ability to stream video content (in return for payment).). In sum, the businesses in the cases above qualified as video tape service providers because they either charged users to view video content on a mobile app, they sold video content to consumers in physical form (like Blockbuster used to do), or a core function of their website or mobile app was the dissemination of video content.

-8-

Simply making short video clips available for costless viewing on its platform, as an incidental medium for advertising its products, does not make General Mills a business "engaged in" the rental, sale, or delivery of videos. If this was the case, quite literally any person that provides video media in any capacity would fall under the definition of a video tape service provider. Indeed, the specific promotional videos Plaintiffs allegedly viewed on General Mills websites were both under 50 seconds in length. Delivering video content for under a minute is hardly the focus of one of the country's largest manufacturer and distributor of food products. All companies engage in promotion of their own business, but that does not make the distribution of promotional video material "a focus" of a consumer goods company. General Mills is not a "video tape service provider" under the VPPA.

**2.      Plaintiffs are not "consumers" under the VPPA.**

Plaintiffs also fail to state a VPPA claim because they have not plausibly alleged that they are "consumers," the sole individuals entitled to bring claims under the VPPA. 18 U.S.C. § 2710(a)(1). "Consumer" is defined as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id*. "The terms 'renter,' 'purchaser,' and 'subscriber' are not further defined in the Act and thus are given their ordinary meaning." *In re Hulu*, 2012 WL 3282960 at *1, *7; *see also United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020) ("We begin our analysis with the text of the statute and with the presumption that Congress intended that the words used be given their plain and ordinary meaning."); *Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1062 (9th Cir. 2009) [for "terms [that] are not defined in the statute, they should be given their ordinary meaning."]); *See Carter v. Scripps Networks LLC*, No. 22-cv-2031, 2023 WL 3061858, at *4 (S.D.N.Y. Apr. 24, 2023) ("In evaluating whether a plaintiff is a subscriber [under the VPPA], courts have looked to dictionary definitions.").

Plaintiffs cannot allege that they rented any video content from General Mills, who charges nothing for viewing its videos. Plaintiffs instead allege they are

-9-

"consumers" under the VPPA because they (1) "have purchased and eaten General Mills' products before" (Complaint ¶ 48); and (2) purportedly downloaded a General Mills smartphone application on their mobile device. (Complaint ¶ 49.) They never allege they purchased, rented or subscribed to any General Mills video. This temporally attenuated and exceedingly limited conduct does not give Plaintiffs "consumer" status as either a renter, purchaser, or subscriber. Plaintiffs do not allege that their interactions with the General Mills website involved the payment of any money for videos, afforded them secured access to restricted content, imposed any ongoing commitment or obligation, required them to provide General Mills with any of their personal information, or otherwise forged a "consumer" relationship with General Mills.

First, Plaintiffs' assertion that they are a General Mills "consumer" because they purchased and ate unspecified food products on unspecified dates in the past is patently insufficient. On its face, that allegation invites this Court to expand VPPA well beyond its intended scope. The VPPA's purpose, as stated in the Senate Report that accompanied it, is "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1 (1988), as reprinted in 1988 U.S.C.C.A.N. at 4342-1. Indeed, "[t]he act allows consumers to maintain control over personal information divulged and *generated in exchange for receiving services from video tape service providers* . . . ." *Id*. at 1 4342-8 (emphasis added). By way of example, the Senate report explains that "a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products." *Id*. at 4342-12. Plaintiffs' food-purchasing allegation has nothing to do with the purchasing of a video. Because Plaintiffs do not explain how their alleged purchase and consumption of General Mills *food* products, *i.e.*, a box of Cheerios or a Betty Crocker Cake Mix, gives rise to right of privacy under the VPPA, this allegation fails to qualify them as consumers. *See Scripps Networks*, 2023 WL

-10-

3061858, at *6 ("In the [VPPA's] full context, a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser or subscriber of audio-visual goods or services, *and not goods or services writ large* ... Section 2710(b)(1) provides for an action by a renter, purchaser, o[r] subscriber of audio visual materials, and not a broader category of consumers.") (emphasis added). Accordingly, Plaintiffs have not plausibly alleged that they are "purchasers" for purposes of a VPPA violation. Moreover, even if Plaintiffs could satisfy the "purchaser" requirement through packaged food purchases—which they cannot—Plaintiffs have not even alleged when or where their purchases occurred, let alone that such purchases had any connection whatsoever to General Mills' websites.

Second, Plaintiffs' allegation that they constitute a General Mills "subscriber" because they downloaded a General Mills free mobile phone application at an unspecified time and without concomitantly providing General Mills with any personal information is equally unavailing. (Complaint ¶ 49.) To attain "subscriber status," a plaintiff must have actively provided a "video service provider" with his or her PII, or otherwise created an ongoing commitment or relationship between the "subscriber" and the "video service provider." *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) ("In interpreting the term 'subscriber,' we have previously said that the term requires some sort of 'ongoing commitment or relationship between the user and the entity which owns and operates the app.'") (citation omitted); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) ("The dictionary definitions of the term 'subscriber' we have quoted above have a common thread . . . involv[ing] some type of commitment, relationship, or association (financial or otherwise) between a person and an entity."); *Scripps Networks*, 2023 WL 3061858, at *4 ("Conventionally, 'subscription' entails an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit...."); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y.

NOTICE OF MOTION AND MOTION TO DISMISS

2015) (an arrangement between "subscriber" and "provider" "necessarily require[s] some sort of ongoing relationship … so as to supply the provider with sufficient personal information to establish the relationship and exchange.").

Plaintiffs do not allege that they signed up for a General Mills account to view videos; provided any personal information to General Mills; made any payments to General Mills to view a video or access any other content on its websites; received a General Mills ID or user name; or otherwise established any going-forward relationship with General Mills to watch videos. Further, and crucially, Plaintiffs do not identify what General Mills mobile application was downloaded and do not assert that any General Mills mobile application was required to access the videos nor that they allegedly watched any videos on the mobile application.[2] Plaintiffs' bare download of an unspecified General Mills application onto their mobile devices is not enough to make Plaintiffs "subscribers" under the VPPA.

*Perry v. Cable News Network, Inc*., *supra*, is noteworthy. In *Perry*, the plaintiff claimed to be a "subscriber" because he downloaded the defendant's free mobile phone application. 854 F.3d at 1342–43. The plaintiff, as here, failed to allege that he formed a relationship with the defendant beyond simply downloading its free application. (Compare *Perry*, at 1342–43, with Complaint ¶ 48.) Because Plaintiffs could delete any General Mills free mobile application without consequence, mere download of that application does not transform Plaintiffs into a "consumer" afforded VPPA protection. *Perry*, at 1343–44; *see also Ellis*, 803 F.3d at 1257 ("[D]ownloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates

---

[2] General Mills' Betty Crocker mobile application was discontinued in March 2020. *See* https://www.bettycrocker.com/farewell-to-the-betty-crocker-app (last visited May 24, 2023). The Court may take judicial notice of this fact, as the public website is incorporated by reference in the Complaint and its authenticity is not in dispute.

-12-

NOTICE OF MOTION AND MOTION TO DISMISS

the app."); *Scripps Networks*, 2023 WL 3061858, at *6–7 (granting motion to dismiss VPPA claim because plaintiffs' mere subscription to website newsletter was insufficient to imbue them with "consumer" status under the VPPA; "[T]he Complaint does not include facts that plausibly allege that [plaintiffs'] status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience. *They were subscribers to newsletters, not subscribers to audio visual materials*.") (emphasis added). Moreover, Plaintiffs' supposed "seamless access to [General Mills'] [W]ebsite" via the mobile application (Complaint ¶ 49), does not create a heightened relationship between them and General Mills to allow them to invoke "subscriber" status. *Ellis*, 803 F.3d at 1257 ("The downloading of an app … is the equivalent of adding a particular website to one's Internet browser as a favorite, allowing quicker access to the website's content. Under the circumstances, [plaintiff] was not a 'subscriber'….").

Plaintiffs cannot qualify as "subscribers of General Mills under the VPPA because (1) there is no allegation, nor is it possible to allege, that its mobile application requires a user to turn over PII; (2) Plaintiffs did not register or sign-up to receive recurring and/or restricted content from General Mills; (3) Plaintiffs fail to allege that they formed any relationship with General Mills beyond simply downloading its mobile application for "seamless access to" General Mills' websites and products; and (4) Plaintiffs were free to delete and remove General Mills mobile application at any time, without consequence. Plaintiffs therefore fails to state a VPPA claim.

### 3. General Mills did not "knowingly disclose" Plaintiffs' Personally Identifiable Information.

Plaintiffs further fail to state a VPPA claim because Plaintiffs' Complaint reveals that to the extent any information was possibly disclosed, such disclosure was made by their web browser, and was not knowingly made by General Mills.

-13-

NOTICE OF MOTION AND MOTION TO DISMISS

Even if the Court is willing to indulge Plaintiffs' assertion that their PII was disclosed to Facebook and Google, Plaintiffs fail to plausibly allege the existence of a "knowing disclosure" by General Mills. The VPPA prohibits the knowing disclosure of PII, defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3), (b)(1). Plaintiffs must, therefore, allege (1) that General Mills disclosed PII—information that both identified them as individuals and identified video content that they requested or acquired—and (2) that General Mills disclosed that PII knowingly.

As with the definitions of consumer and video tape service provider, the Complaint attempts to simply assert that a Facebook ID or Google ID is "personally identifiable information." Plaintiffs speculate, "[a]nyone can identify a Facebook profile . . . by appending the Facebook ID at the end of Facebook.com." (Complaint ¶ 29.) Plaintiffs similarly speculate that a Google ID can be surmised through a unique cookie stored on their browser. (Complaint ¶ 42.) Plaintiffs fail to support these legal conclusions with facts alleging that the data is identifiable to an ordinary person, as required by the Ninth Circuit. (*See* Complaint ¶ 17, 19, 23, 31, 32 (referring to an "ordinary person" but not describing facts in support of allegation).) The Ninth Circuit articulates an ordinary person test for whether data is individually identifiable, not a test involving ordinary persons with specialized knowledge, such as knowledge of how Facebook or Google construct its URLs. See *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (holding that a device serial number is not PII because the linkage is too remote for an "ordinary person" to relate the number to an identifiable individual). The Complaint does not plead any facts to show that the information General Mills allegedly disclosed to Facebook and Google is sufficient for an ordinary person to identify Plaintiffs.

Moreover, it is not enough for Plaintiffs to allege that an ID, a random set of numbers, is PII when "the third party must 'pair' [the numbers] with information

-14-

1    from a user's . . . profile page, which may or may not contain various personal

2    information about the user." *Wilson v. Triller, Inc*., 598 F. Supp. 3d 82, 92 (S.D.N.Y.

3    2022); *see also Eichenberger*, 876 F.3d. at 986 (noting that the disclosed information

4    could not identify an individual unless it was combined with other data). Since

5    Plaintiffs have not plausibly alleged that an ordinary person could use any of the

6    allegedly disclosed identifiers to identify them—much less any video content they

7    consumed—they fail to allege the information allegedly disclosed constitutes PII.

8          Even if, however, the information disclosed by the pixels is determined to be

9    PII, the pixel's transmission of the information to Facebook and Google does not

10   qualify as a knowing disclosure of PII. For the pixel to transmit PII to Facebook or

11   Google, the website visitor must already have a Facebook profile or Google account.

12   As a practical matter, it is not possible for General Mills to know whether each visitor

13   to its websites, including Plaintiffs, have a Facebook profile or Google account.

14   Because General Mills does not have this knowledge it cannot knowingly disclose

15   any identifying data to Facebook or Google. In the context of the VPPA, "the term

16   'knowingly' connotes actual knowledge." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d

17   1090, 1095 (N.D. Cal. 2015) (observing that it is "not enough . . . that a disclosure

18   be merely 'voluntary' in the minimal sense of the defendant's being 'aware of what

19   he or she is doing'").

20         The Complaint asserts the legal conclusion that General Mills "knowingly"

21   disclosed Plaintiffs information based on the allegation that General Mills used data

22   from Facebook and Google to target audiences for advertising campaigns. This,

23   however, is not the test. Instead, Plaintiffs must allege "that the video-service

24   provider actually knew that it was disclosing: 1) a user's identity; 2) the identity of

25   the video material; and 3) the connection between the two—i.e., that the given user

26   had 'requested or obtained' the given video material." *In re Hulu*, 86 F. Supp. 3d at

27   1097; *See also Martin v. Meredith Corp.*, No. 22cv4776, 2023 WL 2118074, *4

28   (S.D.N.Y. Feb. 17, 2023), *appeal filed*, No. 23-412 (2d Cir. Mar. 17, 2023). The

-15-

NOTICE OF MOTION AND MOTION TO DISMISS

Complaint makes none of the allegations necessary to show that General Mills knowingly disclosed Plaintiffs PII.

Plaintiffs' failure to allege General Mills "knowingly" disclosed PII to Facebook and Google is also fatal to their claims. *See, e.g.*, *Mollett v. Netflix, Inc.*, No. 11-CV-01629, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012) (dismissing VPPA claim in part because it was unreasonable to infer knowing disclosure of PII from conclusory allegations).

### 4. General Mills' disclosure of information was "incident to the ordinary course of business."

Plaintiffs fail to state a claim under the VPPA for the additional reason that General Mills' use of the Facebook Pixel and Google Analytics as alleged in the Complaint was undertaken as part of General Mills' ordinary course of business.

There are several exceptions written into the VPPA under which disclosure of PII is permitted, including "if the disclosure is incident to the ordinary course of business of the video tape service provider." *See* 18 U.S.C. § 2710(b)(2)(E). Advertising and marketing fall within the bounds of General Mills' "ordinary course of business" and for General Mills, "this is a lawsuit about online advertising practices, not online videos." *See In re Nickelodeon Consumer Priv. Litig.*, Nos. 12-07829, 13-03755, 13-03729, 13-03757, 13-03731, 13-03756, 2014 WL 3012873, at *8 (D. N.J. July 2, 2014).

The VPPA defines "ordinary course of business" as "debt collection activities, order fulfillment, request processing, and the transfer of ownership," although the term encompasses more than this definition would seem to suggest. The 1988 Senate Judiciary Report on the VPPA describes that the purpose of this particular exception was to "take[] into account that video tape service providers may use third parties in their business operations" and that the exception "allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called 'order

-16-

162172173.5

fulfillment' and 'request processing.'" S. REP. NO. 100-599, at 12 (1988), *as reprinted in* 1988 U.S.C.C.A.N. at 4342-1, 4342-12.

There is no question that General Mills installed the Facebook Pixel and Google Analytics to improve its marketing. As Plaintiffs allege, "Facebook enables advertisers to identify 'people who have already shown interest in [their] business,' which Facebook calls 'Custom Audiences.' The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel." (Complaint ¶ 13.)

Further, Plaintiffs allege that "Google Analytics is 'designed to work together' with other Google Marketing Platform products to help measure, understand and enhance a website's digital marketing." (Complaint ¶ 39.) This use of information is contemplated under and permitted by the VPPA.

The facts alleged by Plaintiffs are much more akin to those that arose in the case of *Sterk v. Redbox Automated Retail, LLC* than they are to the publication of one's video store rental history. In *Sterk*, the Seventh Circuit Court of Appeals held that Redbox's disclosure of its customers' PII to one of its vendors was permitted under the "ordinary course of business" exception. *See* 770 F.3d 618 (7th Cir. 2014). In that case, Redbox (an automated video rental machine) out-sourced certain customer service functions to a vendor called "Stream," which provided live customer service support to Redbox customers. *Id*. at 621. Redbox in turn provided access to its database of customer information, including PII, to Stream to enable its customer service representatives to assist Redbox customers. *Id*. The court found that the disclosure was permissible and fell within the "ordinary course of business" exception because it was "incident to the request processing function that Stream serves." *Id*. at 626; *see also Rodriguez v. Sony Comput. Ent. Am.*, LLC, 801 F.3d 1045, 1054 (9th Cir. 2015) ("[N]o business is an island and . . . video tape services providers, like many other businesses, 'may use third parties in their business operations . . . .'") (quoting *Sterk*, 770 F.3d at 623).

-17-

1    Similarly here, General Mills' disclosure of information to Facebook and
2    Google is incident only to the function that Facebook and Google serve in optimizing
3    General Mills' marketing. Marketing falls within the ordinary course of General
4    Mills' business and so any disclosure of information to a vendor incident to that
5    purpose may not give rise to liability on the part of General Mills. *See* 18 U.S.C. §
6    2710(c)(4).

7    **B.    Plaintiffs' Reading of the VPPA is Unconstitutional.**

8        Plaintiffs' construction of the VPPA is so impermissibly broad as to render the
9    statute unconstitutional. Plaintiffs asks this Court to find any reporting of a visit to a
10   web page that contains a video constitutes a violation of the VPPA. Such a restriction
11   on the display of video materials would advance no legitimate governmental interest
12   and constitute an impermissible regulation of commercial free speech. The First
13   Amendment "protects commercial speech from unwarranted governmental
14   regulation." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S.
15   557, 561 (1980); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571–72 (2011)
16   ("Under a commercial speech inquiry, it is the State's burden to justify its content
17   based law as consistent with the First Amendment."). Applying the VPPA to
18   company's videos about its food products, which are neither "misleading nor related
19   to unlawful activity," would further no "substantial [governmental] interest" and
20   would represent an "excessive" limitation on commercial speech in violation of the
21   First Amendment, which simply "cannot survive." *Cent. Hudson*, 447 U.S. at 564;
22   *see also Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018)
23   ("Restrictions on commercial speech must survive intermediate scrutiny under
24   *Central Hudson* . . . and must not be 'more extensive than is necessary to serve [a
25   substantial government] interest.'" (quoting *Cent. Hudson*, 447 U.S. at 566)).

26       It is a "cardinal principle . . . beyond debate" that "where an otherwise
27   acceptable construction of a statute would raise serious constitutional problems, the
28   Court will construe the statute to avoid such problems unless such construction is

-18-

1   plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf*
2   *Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (citation omitted).
3   Even if we assume that Plaintiffs' widely expansive reading of the VPPA is an
4   "otherwise acceptable construction," it must be rejected as unconstitutional. As part
5   of this avoidance of constitutional doubt, "[t]he elementary rule is that every
6   reasonable construction must be resorted to, in order to save a statute from
7   unconstitutionality." *Id*. (alteration in original) (quoting *Hooper v. California*, 155
8   U.S. 648, 657 (1895)).

9       If, as Plaintiffs would have the Court conclude, the VPPA restricts sharing
10  information about users' visit to a webpage with a video—even short clips or ads, it
11  would fail to advance any reasonable governmental interests and thereby constitute
12  an impermissible restriction under the First Amendment. Plaintiffs' interpretation of
13  the VPPA contradicts common sense, congressional intent, and fundamental
14  doctrines of constitutional and statutory interpretation. The only reasonable
15  construction of the VPPA that avoids rendering the statute unconstitutionally broad
16  lies in the conclusion that a website with incidental video content is not a video tape
17  service provider engaged in the business of renting, selling, or delivering prerecorded
18  video cassette tapes or similar audio visual materials. In accordance with these
19  principles, this Court should confine the VPPA to its proper scope and reject
20  Plaintiffs' unbounded interpretation of the statute.

21  **C.    Plaintiffs' Complaint Should Be Dismissed Without Leave To Amend**

22      Though leave to amend is generally liberally granted, leave to amend here
23  would be futile and a waste of judicial resources. Where a motion to dismiss is
24  granted, a district court should deny leave to amend when it is clear that the complaint
25  could not be saved by any amendment. *See Leadsinger, Inc. v. BMG Music Publ'g*,
26  512 F.3d 522, 532 (9th Cir. 2008) (quoting *Polich v. Burlington N., Inc.*, 942 F.2d
27  1467, 1472 (9th Cir.1991)). Plaintiffs' Complaint is completely without merit and
28  contradicts established law, congressional intent and common sense. Plaintiffs cannot

-19-

NOTICE OF MOTION AND MOTION TO DISMISS

1  cure the fatal defects of their Complaint. General Mills should not be forced to

2  continue to incur costs defending this meritless lawsuit.

3  **V.    CONCLUSION**

4      For the above-stated reasons, General Mills respectfully request that the court

5  grant its Motion to Dismiss Plaintiffs' Complaint in its entirety without leave to

6  amend.

7

8  DATED: May 24, 2023          **PERKINS COIE LLP**

9

10                     By: */s/ Aaron R. Goldstein*
                            Aaron R. Goldstein 239423
11                          AGoldstein@perkinscoie.com

12                     Attorneys for Defendant
                       GENERAL MILLS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS

162172173.5