David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
Aaron R. Goldstein, Bar No. 239423
AGoldstein@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Defendant
GENERAL MILLS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| KEITH CARROLL, and REBEKA RODRIGUEZ, individually and on behalf of others similarly situated, | Case No. 2:23-cv-01746-DSF-MRW |
|---|---|
| Plaintiffs, | **DEFENDANT GENERAL MILLS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| GENERAL MILLS, INC., a Delaware corporation d/b/a BETTYCROCKER.COM; and DOES 1 through 10, inclusive | Date:           September 11, 2023<br>Time:           1:30 p.m.<br>Courtroom:  7D<br>Judge:         Hon. Dale S. Fischer |
| Defendant. | |

-1-

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 11, 2023, at 1:30 p.m. in Courtroom 7D of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, defendant General Mills, Inc. will, and hereby does, move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing with prejudice this case brought by plaintiffs Keith Carroll, Rebeka Rodriguez, and the putative national class.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers on file in this action, and such other and further matters as the Court may consider.

This motion is made following the conference of counsel which took place on July 26, 2023, in accordance with Civil Local Rule 7-3. The parties were unsuccessful in their attempt to resolve their dispute and now require the Court's assistance.


DATED:  August 2, 2023          **PERKINS COIE LLP**


By: */s/ Aaron R. Goldstein*
      Aaron R. Goldstein 239423
      AGoldstein@perkinscoie.com

Attorneys for Defendant
GENERAL MILLS, INC.

-2-

NOTICE OF MOTION AND MOTION TO DISMISS

163164742.4

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     SUMMARY OF FACTUAL ALLEGATIONS ................................. 3

III.    LEGAL STANDARD ........................................................................ 4

IV.    ARGUMENT ..................................................................................... 5

       A.     Plaintiffs' SAC Should be Dismissed Because Plaintiffs Have
              Failed to State a Claim for A Violation of The VPPA. ......................... 5

              1.     General Mills is not a video tape service provider. ..................... 6

              2.     Plaintiffs are not "consumers" under the VPPA. ...................... 10

              3.     General Mills did not "knowingly disclose" Plaintiffs'
                     Personally Identifiable Information. ............................................ 14

              4.     General Mills' disclosure of information was "incident to
                     the ordinary course of business." ................................................ 17

       B.     Plaintiffs' Reading of the VPPA is Unconstitutional. ......................... 19

V.     CONCLUSION ............................................................................... 20

163164742.4

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ambrose v. Bos. Globe Media Partners LLC,*
No. 21-10810, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ............................ 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 4, 5

*Austin-Spearman v. AMC Network Ent. LLC,*
98 F. Supp. 3d 662 (S.D.N.Y. 2015) .................................................... 12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................ 4, 5

*Belozerov v. Gannett Co., Inc.,*
2022 WL 17832185 (D.Mass. Dec. 20, 2022) ....................................... 8

*Cantu v. Tapestry, Inc.,*
3:22-cv-01974-BAS-DDL (S.D. Cal. Dec. 13, 2022) ........................... 3

*Cappello v. Walmart Inc.,*
No. 18-cv-06678S, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .............. 9

*Carroll v. Chick-Fil-A, Inc.,*
4:23-cv-00314-YGR (N.D. Cal. Jan. 22, 2023) .................................. 3

*Carroll v. J. M. Smucker Co.,*
3:22-cv-08952-WHA (N.D. Cal. Dec. 19, 2022) ................................. 3

*Carroll v. Procter & Gamble Co.,*
3:23-cv-00010-MMA-MDD (S.D. Cal. Jan. 3, 2023) ........................... 3

*Carter v. Scripps Networks LLC,*
No. 22-cv-2031, 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023)
.................................................................................. 10, 11, 12, 13

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
447 U.S. 557 (1980) ........................................................................ 19

*Czarnionka v. Epoch Times Ass'n,*
No. 22 Civ. 6348, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ............ 8

-ii-

163164742.4

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
    485 U.S. 568 (1988) ................................................................................ 19, 20

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ..................................................................... 15

*Ellis v. Cartoon Network, Inc.*,
    803 F.3d 1251 (11th Cir. 2015) ........................................................ 12, 13, 14

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ................................................................... 10

*Hooper v. California*,
    155 U.S. 648 (1895) ................................................................................... 20

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019)......................................................... 7

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015)....................................................... 16

*In re Hulu Priv. Litig.*,
    No. C 11-03764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012)................... 9, 10

*In re Nickelodeon Consumer Priv. Litig.*,
    Nos. 12-07829, 13-03755, 13-03729, 13-03757, 13-03731, 13-03756, 2014 WL 3012873 (D. N.J. July 2, 2014) ............................... 17

*In re Vizio, Inc., Consumer Privacy Litigation*,
    238 F.Supp.3d 1204 (C.D. Cal. 2017)........................................... 1, 6, 7

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) ................................................................... 19

*Lebakken v. WEBMD, LLC*,
    No. 1:22-CV-644, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ....................... 8

*Louth v. NFL Enters. LLC*,
    No. 21-cv-00405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022)............................. 9

*Martin v. Meredith Corp.*,
    No. 22cv4776, 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023),
    *appeal filed*, No. 23-412 (2d Cir. Mar. 17, 2023) ................................. 16

-iii-

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ............................................................. 5

*Mollett v. Netflix, Inc.*,
    No. 11-CV-01629, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) .................... 16

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017) ...................................................... 12, 13

*Rodriguez v. Hershey*,
    3:23-cv-00398-L-DEB (S.D. Cal. Mar. 2, 2023) ...................................... 3

*Rodriguez v. The Pampered Chef, Ltd.*,
    2:23-cv-02920-SVW-JPR (C.D. Cal. Apr. 18, 2023) ................................. 3

*Rodriguez v. Sony Comput. Ent. Am., LLC*,
    801 F.3d 1045 (9th Cir. 2015) ......................................................... 18

*Rodriguez v. Transform SR Brands LLC*,
    3:23-cv-00585-L-AHG (S.D. Cal. Mar. 31, 2023) .................................... 3

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ..................................................................... 19

*Stark v. Patreon, Inc.*,
    No. 22-CV-03131-JCS, 2022 WL 7652166 (N.D. Cal., Oct. 13, 2022) .................................................................................... 8

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ........................................................... 5

*Sterk v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) ........................................................... 18

*United States v. Pacheco*,
    977 F.3d 764 (9th Cir. 2020) ........................................................... 10

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022) .................................................. 15

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ............................................................ 8

-iv-

**STATUTES**

18 U.S.C. § 2710(a)(1) ................................................................ 10

18 U.S.C. § 2710(a)(3), (b)(1) ................................................... 14

18 U.S.C. § 2710(a)(4) ......................................................... 1, 6, 7

18 U.S.C. § 2710(b)(1) ......................................................... 5, 11

18 U.S.C. § 2710(b)(2) ................................................................ 5

18 U.S.C. § 2710(b)(2)(E) ......................................................... 17

18 U.S.C. § 2710(c)(4) ............................................................... 18

Video Protection Privacy Act ("VPPA") ...........................passim

**RULES**

Fed. R. Civ. P. 8(a)(2)................................................................ 5

Rule 12(b)(6)................................................................................ 4

**OTHER AUTHORITIES**

U.S. Const. amend. I............................................................ 19, 20

S. Rep. No. 100-599 (1988), *as reprinted in* 1988 U.S.C.C.A.N. at 4342-1 ....................................................................... 11, 17

NOTICE OF MOTION AND MOTION TO DISMISS

163164742.4

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant General Mills, Inc. ("General Mills") hereby submits this memorandum of points and authorities in support of its Motion to Dismiss the Second Amended Class Action Complaint ("SAC") for Violation of the Video Protection Privacy Act ("VPPA") of plaintiffs Keith Carroll and Rebeka Rodriguez ("Plaintiffs").

## I.    INTRODUCTION

This Court dismissed Plaintiffs' First Amended Complaint ("FAC") alleging violation of the VPPA, arriving at the commonsense conclusion that General Mills, a maker and seller of food products and whose websites provide free promotional videos to market those products, is not a "video tape service provider." The FAC alleged that General Mills violated the VPPA by including promotional videos on its websites and also using "pixels" to track page views and other visitor metrics— hardly the video service provider contemplated by the statute. Indeed, in finding that General Mills was not a video tape service provider, this Court drew upon the statutory language and *In re Vizio, Inc.*, which to be classified as a video tape service provider a defendant must be "engaged in the business" of delivering video content as "a particular field of endeavor," and that "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." (Dkt. 21 at pgs. 5-6 (citing 18 U.S.C. § 2710(a)(4) and *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F.Supp.3d 1204, 1221 (C.D. Cal. 2017)), emphasis in original.) "General Mills provides videos as a peripheral part of its marketing strategy," hardly enough to garner liability under the VPPA. (*Id*. at pgs. 6-7.)

Plaintiffs have now amended their complaint to plead around the Court's ruling, but they still fail to state a claim. Nothing they allege is sufficient to show that General Mills' sale of food products—cereals, yogurts, cake mixes, dog food, and other packaged foods—is substantially involved in the delivery of video content or

-1-

significantly tailored to serve that purpose. Nor do they allege that these products' substantial purpose is to deliver video content to consumers. The SAC alleges that General Mills is a video tape service provider because, in addition to the videos promoting its food products, it advertises on its websites, sells cookbooks, and monetizes its cooking videos with an official page on social media site YouTube. The theory seems to be that by using videos to promote its products on YouTube, General Mills has transformed from a peripheral user of video to a video tape service provider. This would make all YouTube content subject to the VPPA—a dramatic and illogical extension of the narrowly drawn statute.

In short, it is not enough to allege that General Mills' website includes video content, or that General Mills relies upon video content on social media sites to promote its brand. Instead, Plaintiff must allege facts showing that General Mills' "particular field of endeavor" is the delivery of video content, and that its products are "substantially involved in the conveyance of video content to consumers" and "significantly tailored to serve that purpose." This they do not, and cannot, allege. For this reason, the SAC complaint must be dismissed.

Plaintiffs' complaint is also flawed for the remaining reasons identified in General Mills' previous motion. Despite this Court's cautionary advice, Plaintiffs did not amend to include additional facts or allegations in support of the other essential elements of a VPPA claim. These failures, which plaintiff never sought to remedy, include that Plaintiffs do not and cannot allege:

o that Plaintiffs are "consumers" or "subscribers" under the VPPA when the most they allege is that they purchased General Mills food products and did not purchase any General Mills videos and are not obligated to view or maintain the websites at issue;

o that General Mills "knowingly" disclosed allegedly PII, when the allegations are unclear if the video viewing history was transmitted anywhere and

-2-

NOTICE OF MOTION AND MOTION TO DISMISS

General Mills itself does not control the Facebook and Google pixels that allegedly contain such information; and

    o      that any disclosure of information was not "incident to the ordinary course of business," when General Mills is engaged in production and marketing its foods and the use of Facebook and Google pixels is a logical incidental component of its business.

Additionally, Plaintiffs' construction of the VPPA is so impermissibly broad as to render the statute unconstitutional.

For all of the foregoing reasons, Plaintiffs' SAC must be dismissed, and because they have already had two prior opportunities to amend, the dismissal should be with prejudice.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

Most of the allegations in Plaintiffs' complaint could apply to almost any company that hosts a video on its website. It is therefore unsurprising that Plaintiffs' counsel has filed over forty other cases in federal and state courts in California asserting essentially the same allegations with minimal revisions.[1]

Plaintiffs are self-proclaimed "individuals and consumer advocate[s]" who claim to frequent websites in an effort to weed out purported privacy violations under the guise of advancing public interests. (SAC ¶¶ 6-7, 79.) Plaintiffs claim to be "consumers" under the VPPA because they "have purchased and eaten [General Mills'] products before" and purportedly downloaded a General Mills smartphone application, at some unspecified time, on their mobile device. (SAC ¶¶ 77-78.) Plaintiffs allege that General Mills "owns, operates, and/or controls a variety of

---

[1] *See, e.g.*, *Rodriguez v. The Pampered Chef, Ltd.*, 2:23-cv-02920-SVW-JPR (C.D. Cal. Apr. 18, 2023); *Rodriguez v. Transform SR Brands LLC*, 3:23-cv-00585-L-AHG (S.D. Cal. Mar. 31, 2023); *Rodriguez v. Hershey*, 3:23-cv-00398-L-DEB (S.D. Cal. Mar. 2, 2023); *Carroll v. Chick-Fil-A, Inc.*, 4:23-cv-00314-YGR (N.D. Cal. Jan. 22, 2023); *Carroll v. Procter & Gamble Co.*, 3:23-cv-00010-MMA-MDD (S.D. Cal. Jan. 3, 2023); *Carroll v. J. M. Smucker Co.*, 3:22-cv-08952-WHA (N.D. Cal. Dec. 19, 2022); *Cantu v. Tapestry, Inc.*, 3:22-cv-01974-BAS-DDL (S.D. Cal. Dec. 13, 2022).

websites," including sites for its Betty Crocker (https://www.bettycrocker.com) and General Mills Convenience & Food Service (https://www.generalmillscf.com) brands. (SAC ¶ 8.) They allege General Mills' business plan "involves increasing its brand presence via the use of videos" hosted on those websites. (SAC ¶¶ 8, 18.) Plaintiffs' allege that General Mills' use of video content on its website, as a "critical marketing channel" for purposes of "attract[ing] potential, new customers" for its packaged food products makes General Mills a "video tape service provider" for purposes of the VPPA. (SAC ¶¶ 18, 40, 45-46.)

Plaintiffs allege that they visited the General Mills websites with the intent to enforce the VPPA, but also to learn about General Mills products. (SAC ¶ 79.) While there, they viewed videos on the websites. (SAC ¶¶ 6-7, 34, 81.) A visit to the websites identified shows that these videos are short, instructional, or informational, each in general lasting about 60 seconds. *See, e.g.,* How to Make Cornbread Video at https://www.bettycrocker.com/videos/cornbread or Easter Side Dish Idea at https://www.bettycrocker.com/videos/videolibrary/side-dishes/green-bean-casserole. Plaintiffs then allege that cookies on their web browser then disclosed to Facebook and Google tracking pixels the video's content, title, and location, along with some form of unspecified PII. (SAC ¶¶ 34, 44, 81-82, 94.) Plaintiffs allege this shows a "knowing disclosure" of their PII in violation of the VPPA. (SAC ¶¶ 31-32, 94.) Plaintiffs do not allege that General Mills disclosed that they each actually viewed or interacted with the video, as opposed to simply visiting a page with video content. Plaintiffs purport to represent themselves and a putative national class of others who visited these sites. (SAC ¶¶ 85-86.)

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-

-4-

harmed-me accusation" and more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (citation omitted). A "formulaic recitation of the elements of a cause of action" simply will not do. *Twombly*, 550 U.S. at 555. Nor is it enough for a plaintiff to allege facts "merely consistent with" liability or showing only that entitlement to relief is possible. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Further, the Court need not accept allegations contradicted by materials cited in the complaint or subject to judicial notice. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

## IV.    ARGUMENT

### A.    Plaintiffs' SAC Should be Dismissed Because Plaintiffs Have Failed to State a Claim for A Violation of The VPPA.

Taking all well-pleaded factual allegations in the SAC as true, Plaintiffs fail to plausibly state a claim for violation of the VPPA.

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . . ." 18 U.S.C. § 2710(b)(1). In order to plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly and without consent, and (4) the disclosure was not authorized by section 2710(b)(2). *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiffs seek an unprecedented extension of this narrow statute to apply to them but fail to allege these critical elements.

-5-

### 1.     General Mills is not a video tape service provider.

Despite the amendments to the complaint, Plaintiffs SAC fails to state a VPPA claim because General Mills is not a video tape service provider. The VPPA's scope is limited to disclosures by a "video tape service provider," defined as an entity "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

While burdening the SAC with a host of new allegations, Plaintiffs do not, and cannot, allege facts showing that General Mills is a video tape servicer provider within the meaning of the VPPA. As this Court held previously, "[t]he statute does not cover every company that merely delivers audio visual materials ancillary to its business. It is confined to those engaged specifically *in the business of* providing audio visual materials." Dkt. 21 at pg. 5, citing *In re Vizio*, 238 F. Supp. 3d at 1221. "When used in this context, 'business' connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." *Id.*

As the court in *In re Vizio* and this Court clarified, "for the defendant to be 'engaged in the business' of delivering video content, **the defendant's product** must not only be **substantially involved in the conveyance of video content** to consumers but also **significantly tailored to serve that purpose**." *Id.* at pg. 6 (quoting *In re Vizio*). "[D]evelopers of many other products or services that might be peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id.*

Plaintiffs' SAC additional allegations still fail to allege facts showing General Mills is a video tape service provider subject to the statute. Plaintiffs cannot allege that General Mills sells video material. They try to get around that limitation by alleging that "[p]art of Defendant's business involves increasing its brand presence via the use of videos," that General Mills' websites "[deliver] embedded and hosted video content" toward this end (SAC ¶¶ 18, 40), that General Mills advertises on the

-6-

webpages that contain videos, sells cookbooks, and monetizes its cooking videos by placing them on YouTube (SAC ¶¶ 18, 40, 69-72.),[2] and that General Mills has "developed its Websites so that they are significantly tailored to deliver video content to consumers" and "[t]he delivery of video content to consumers on the Websites is a core component of the Websites." (SAC ¶ 46.) Boiled down to their essence, Plaintiffs do no more than claim that General Mills is a video service provider because there are videos on its websites used for marketing. (SAC ¶¶ 45-46, 92 (quoting 18 U.S.C. § 2710(a)(4)).) This is hardly sufficient.

These allegations show nothing more than that General Mills "peripherally engages in the delivery of video content" as part of its online and social media marketing campaigns to promote the business that it is actually engaged in—the production and sale of food products. They do not allege that General Mills' "***product[s*** are] substantially involved in the conveyance of video content to consumers [and] also significantly tailored to serve that purpose." Dkt. 21 at pg. 6 (quoting *In re Vizio* and adding emphasis). Nowhere do Plaintiffs allege that the focus of General Mills' work—its "particular field of endeavor"—is delivering video content or that its food products are substantially involved in the conveyance of video content. *In re Vizio*, 238 F. Supp. 3d at 1221.

Indeed, the General Mills websites, which Plaintiffs incorporate by reference, provide no indication that General Mills is anything other than a consumer goods company selling food products. *Contra In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (*citing Vizio*, 238 F. Supp. 3d at 1221) (finding plausible allegations that Facebook's business is "significantly tailored to serve th[e] purpose" of conveying video content to users, because Facebook "'regularly delivers' video content to users and maintains a cache of videos

---

[2] Plaintiffs' new allegation to "paid advertisements" (SAC ¶ 69) being on the Betty Crocker website is misleading by design, as the only product advertisements are to General Mills food products. *See, e.g.,* the ten new webpages identified in the SAC, at ¶ 49-58, incorporated by reference.

-7-

NOTICE OF MOTION AND MOTION TO DISMISS

and visual materials, including from content providers like Netflix, for their delivery to users"). Nor does General Mills' utilization of YouTube/social media demonstrate that General Mills is anything other than peripherally involved in video delivery.

Plaintiffs' SAC also cites a host of non-binding out of circuit decisions in an effort to stretch the definition of a video tape service provider under the VPPA to all "commercial website owners/operators," including, in the present case, a consumer goods company selling food products. (SAC ¶ 75.) Unlike General Mills, however, the defendants in each of those cases were either engaged in *the media business* or *actually selling video media*. *See Belozerov v. Gannett Co., Inc.*, 2022 WL 17832185, at *1, *3 (D.Mass. Dec. 20, 2022) and *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 484 (1st Cir. 2016) (defendant is an "American media company…that owns more than 260 daily publications, including USA Today" that offers subscriptions to USA Today news videos through defendant's website and app.); *Czarnionka v. Epoch Times Ass'n*, No. 22 Civ. 6348, 2022 WL 17069810, at *1, *4 (S.D.N.Y. Nov. 17, 2022) (defendant is an "international newspaper and media company" in the business of "news programs, television shows, documentaries, movies, and other audiovisual content" which required users to enter "their name, email address, and billing information" to view "Defendants video content" thus creating a paid for subscription relationship with its visitors); *Lebakken v. WEBMD, LLC*, No. 1:22-CV-644, 2022 WL 16716151, at *1, *3 n.2 (N.D. Ga. Nov. 4, 2022) (defendant is a provider of "online health information and medical news . . . through videos," that did not "specifically argue . . . that it is not a video tape service provider"); *Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2022 WL 7652166, at *1 (N.D. Cal., Oct. 13, 2022) (defendant's business model involves third-party video content creators who deliver video content by way of defendant's platform); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-10810, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022) (defendant is a "multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms" that "creates,

-8-

hosts, and disseminates hundreds, if not thousands, of videos" on its website); *Louth v. NFL Enters. LLC*, No. 21-cv-00405, 2022 WL 4130866, at *1 (D.R.I. Sept. 12, 2022) (defendant "owns and operates a mobile application . . . which disseminates 'live local and primetime games, exciting videos and highlights, and replays of every game'" - thus, a core function of the app, is viewing video content); *Cappello v. Walmart Inc.*, No. 18-cv-06678S, 2019 WL 11687705, at *1 (N.D. Cal. Apr. 5, 2019) (defendant "operates the retail websites walmart.com and mobile.walmart.com . . . where it sells a variety of consumer goods, including DVDs, Blu-ray Discs, video games, and other video media" - thus, Walmart functions like Blockbuster, Netflix, and other providers of video content who sells videos to consumers); *In re Hulu Priv. Litig.*, No. C 11-03764, 2012 WL 3282960, at *2 (N.D. Cal. Aug. 10, 2012) (defendant "operates a website called Hulu.com that provides video content," including "news, entertainment, educational, and general interest programs"—Hulu is like Netflix in that it provides consumers the ability to stream video content (in return for payment).). In sum, the businesses in the cases above qualified as video tape service providers because they either charged users to view video content on a mobile app, they sold video content to consumers in physical form (like Blockbuster used to do), or a core function of their website or mobile app was the dissemination of video content.

As this Court previously concluded, simply making short video clips available for costless viewing on its platform or via YouTube, as an incidental medium for advertising its products, does not make General Mills a business "engaged in" the rental, sale, or delivery of videos. If this was the case, quite literally any person that provides video media in any capacity would fall under the definition of a video tape service provider. Indeed, the specific promotional videos Plaintiffs allegedly viewed on General Mills websites were both under 50 seconds in length. Delivering video content for under a minute is hardly the focus of one of the country's largest manufacturer and distributor of food products. All companies engage in promotion

-9-

of their own business, but that does not make the distribution of promotional video material "a focus" of a consumer goods company. General Mills is not a "video tape service provider" under the VPPA. Nothing in the SAC changes these truths.

### 2.    Plaintiffs are not "consumers" under the VPPA.

As a separate and independent basis for granting dismissal, Plaintiffs fail to adequately allege they are "consumers," the sole individuals entitled to bring claims under the VPPA. 18 U.S.C. § 2710(a)(1). "Consumer" is defined as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id*. "The terms 'renter,' 'purchaser,' and 'subscriber' are not further defined in the Act and thus are given their ordinary meaning." *In re Hulu*, 2012 WL 3282960 at *1, *7; *see also United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020) ("We begin our analysis with the text of the statute and with the presumption that Congress intended that the words used be given their plain and ordinary meaning."); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1062 (9th Cir. 2009) [for "terms [that] are not defined in the statute, they should be given their ordinary meaning."]; *See Carter v. Scripps Networks LLC*, No. 22-cv-2031, 2023 WL 3061858, at *4 (S.D.N.Y. Apr. 24, 2023) ("In evaluating whether a plaintiff is a subscriber [under the VPPA], courts have looked to dictionary definitions.").

Plaintiffs cannot allege that they rented any video content from General Mills, who charges nothing for viewing its videos. Plaintiffs instead allege they are "consumers" under the VPPA because they (1) "have purchased and eaten General Mills' products before" (SAC ¶ 77); and (2) purportedly downloaded a General Mills smartphone application on their mobile device. (SAC ¶ 78.) They never allege they purchased, rented or subscribed to any General Mills video. This temporally attenuated and exceedingly limited conduct does not give Plaintiffs "consumer" status as either a renter, purchaser, or subscriber. Plaintiffs do not allege that their interactions with the General Mills website involved the payment of any money for videos, afforded them secured access to restricted content, imposed any ongoing

-10-

commitment or obligation, required them to provide General Mills with any of their personal information, or otherwise forged a "consumer" relationship with General Mills.

First, Plaintiffs' assertion that they are a General Mills "consumer" because they purchased and ate unspecified food products on unspecified dates in the past is patently insufficient. On its face, that allegation invites this Court to expand VPPA well beyond its intended scope. The VPPA's purpose, as stated in the Senate Report that accompanied it, is "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. REP. NO. 100-599, at 1 (1988), *as reprinted in* 1988 U.S.C.C.A.N. at 4342-1. Indeed, "[t]he act allows consumers to maintain control over personal information divulged and *generated in exchange for receiving services from video tape service providers* . . . ." *Id*. at 1 4342-8 (emphasis added). By way of example, the Senate report explains that "a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products." *Id*. at 4342-12. Plaintiffs' food-purchasing allegation has nothing to do with the purchasing of a video. Because Plaintiffs do not explain how their alleged purchase and consumption of General Mills *food* products, *i.e.*, a box of Cheerios or a Betty Crocker Cake Mix, gives rise to right of privacy under the VPPA, this allegation fails to qualify them as consumers. *See Scripps Networks*, 2023 WL 3061858, at *6 ("In the [VPPA's] full context, a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser or subscriber of audio-visual goods or services, *and not goods or services writ large* … Section 2710(b)(1) provides for an action by a renter, purchaser, o[r] subscriber of audio visual materials, and not a broader category of consumers.") (emphasis added). Accordingly, Plaintiffs have not plausibly alleged that they are "purchasers" for purposes of a VPPA violation. Moreover, even if Plaintiffs could satisfy the "purchaser" requirement through packaged food purchases—which they cannot—Plaintiffs have not even

-11-

163164742.4

alleged when or where their purchases occurred, let alone that such purchases had any connection whatsoever to General Mills' websites.

Second, Plaintiffs' allegation that they constitute a General Mills "subscriber" because they downloaded a General Mills free mobile phone application at an unspecified time and without concomitantly providing General Mills with any personal information is equally unavailing. (SAC ¶ 78.) To attain "subscriber status," a plaintiff must have actively provided a "video service provider" with his or her PII, and have created an ongoing commitment or relationship between the "subscriber" and the "video service provider." *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017) ("In interpreting the term 'subscriber,' we have previously said that the term requires some sort of 'ongoing commitment or relationship between the user and the entity which owns and operates the app.'") (citation omitted); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) ("The dictionary definitions of the term 'subscriber' we have quoted above have a common thread . . . involv[ing] some type of commitment, relationship, or association (financial or otherwise) between a person and an entity."); *Scripps Networks*, 2023 WL 3061858, at *4 ("Conventionally, 'subscription' entails an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit…."); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) (an arrangement between "subscriber" and "provider" "necessarily require[s] some sort of ongoing relationship … so as to supply the provider with sufficient personal information to establish the relationship and exchange.").

Plaintiffs do not allege that they signed up for a General Mills account to view videos; provided any personal information to General Mills; made any payments to General Mills to view a video or access any other content on its websites; received a General Mills ID or user name; or otherwise established any going-forward relationship with General Mills to watch videos. Further, and crucially, Plaintiffs do

NOTICE OF MOTION AND MOTION TO DISMISS

not identify what General Mills mobile application was downloaded and do not assert that any General Mills mobile application was required to access the videos nor that they allegedly watched any videos on the mobile application.[3] Plaintiffs' bare download of an unspecified General Mills application onto their mobile devices is not enough to make Plaintiffs "subscribers" under the VPPA.

Perry v. Cable News Network, Inc., *supra*, is noteworthy. In *Perry*, the plaintiff claimed to be a "subscriber" because he downloaded the defendant's free mobile phone application. 854 F.3d at 1342–43. The plaintiff, as here, failed to allege that he formed a relationship with the defendant beyond simply downloading its free application. (Compare *Perry*, at 1342–43, with SAC ¶ 77.) Because Plaintiffs could delete any General Mills free mobile application without consequence, mere download of that application does not transform Plaintiffs into a "consumer" afforded VPPA protection. *Perry*, at 1343–44; *see also Ellis*, 803 F.3d at 1257 ("[D]ownloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app."); *Scripps Networks*, 2023 WL 3061858, at *6–7 (granting motion to dismiss VPPA claim because plaintiffs' mere subscription to website newsletter was insufficient to imbue them with "consumer" status under the VPPA; "[T]he Complaint does not include facts that plausibly allege that [plaintiffs'] status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience. *They were subscribers to newsletters, not subscribers to audio visual materials*.") (emphasis added). Moreover, Plaintiffs' supposed "seamless access to [General Mills'] [W]ebsite" via the mobile application (SAC ¶ 78), does not create a heightened relationship between

---

[3] General Mills' Betty Crocker mobile application was discontinued in March 2020. *See* https://www.bettycrocker.com/farewell-to-the-betty-crocker-app (last visited May 24, 2023). The Court may take judicial notice of this fact, as the public website is incorporated by reference in the SAC and its authenticity is not in dispute.

-13-

NOTICE OF MOTION AND MOTION TO DISMISS

them and General Mills to allow them to invoke "subscriber" status. *Ellis*, 803 F.3d at 1257 ("The downloading of an app … is the equivalent of adding a particular website to one's Internet browser as a favorite, allowing quicker access to the website's content. Under the circumstances, [plaintiff] was not a 'subscriber'….").

Plaintiffs cannot qualify as "subscribers of General Mills under the VPPA because (1) there is no allegation, nor is it possible to allege, that its mobile application requires a user to turn over PII; (2) Plaintiffs did not register or sign-up to receive recurring and/or restricted content from General Mills; (3) Plaintiffs fail to allege that they formed any relationship with General Mills beyond simply downloading its mobile application for "seamless access to" General Mills' websites and products; and (4) Plaintiffs were free to delete and remove General Mills mobile application at any time, without consequence. Plaintiffs therefore fails to state a VPPA claim.

**3.    General Mills did not "knowingly disclose" Plaintiffs' Personally Identifiable Information.**

Plaintiffs further fail to state a VPPA claim because Plaintiffs' SAC reveals that to the extent any information was possibly disclosed, such disclosure was made by their web browser, and was not knowingly made by General Mills.

Even if the Court is willing to indulge Plaintiffs' assertion that their PII was disclosed to Facebook and Google, Plaintiffs fail to plausibly allege the existence of a "knowing disclosure" by General Mills. The VPPA prohibits the knowing disclosure of PII, defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3), (b)(1). Plaintiffs must, therefore, allege (1) that General Mills disclosed PII—information that both identified them as individuals and identified video content that they requested or acquired—and (2) that General Mills disclosed that PII knowingly.

NOTICE OF MOTION AND MOTION TO DISMISS

As with the definitions of consumer and video tape service provider, the SAC attempts to simply assert that a Facebook ID or Google ID is "personally identifiable information." Plaintiffs speculate, "[a]nyone can identify a Facebook profile . . . by appending the Facebook ID at the end of Facebook.com." (SAC ¶ 29.) Plaintiffs similarly speculate that a Google ID can be surmised through a unique cookie stored on their browser. (SAC ¶ 42.) Plaintiffs fail to support these legal conclusions with facts alleging that the data is identifiable to an ordinary person, as required by the Ninth Circuit. (*See* SAC ¶ 17, 19, 23, 31, 32 (referring to an "ordinary person" but not describing facts in support of allegation).) The Ninth Circuit articulates an ordinary person test for whether data is individually identifiable, not a test involving ordinary persons with specialized knowledge, such as knowledge of how Facebook or Google construct its URLs. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (holding that a device serial number is not PII because the linkage is too remote for an "ordinary person" to relate the number to an identifiable individual). The SAC does not plead any facts to show that the information General Mills allegedly disclosed to Facebook and Google is sufficient for an ordinary person to identify Plaintiffs.

Moreover, it is not enough for Plaintiffs to allege that an ID, a random set of numbers, is PII when "the third party must 'pair' [the numbers] with information from a user's . . . profile page, which may or may not contain various personal information about the user." *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022); *see also Eichenberger*, 876 F.3d. at 986 (noting that the disclosed information could not identify an individual unless it was combined with other data). Since Plaintiffs have not plausibly alleged that an ordinary person could use any of the allegedly disclosed identifiers to identify them—much less any video content they consumed—they fail to allege the information allegedly disclosed constitutes PII.

Even if, however, the information disclosed by the pixels is determined to be PII, the pixel's transmission of the information to Facebook and Google does not

NOTICE OF MOTION AND MOTION TO DISMISS

qualify as a knowing disclosure of PII. For the pixel to transmit PII to Facebook or Google, the website visitor must already have a Facebook profile or Google account. As a practical matter, it is not possible for General Mills to know whether each visitor to its websites, including Plaintiffs, have a Facebook profile or Google account. Because General Mills does not have this knowledge it cannot knowingly disclose any identifying data to Facebook or Google. In the context of the VPPA, "the term 'knowingly' connotes actual knowledge." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (observing that it is "not enough . . . that a disclosure be merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or she is doing'").

The SAC asserts the legal conclusion that General Mills "knowingly" disclosed Plaintiffs information based on the allegation that General Mills used data from Facebook and Google to target audiences for advertising campaigns. This, however, is not the test. Instead, Plaintiffs must allege "that the video-service provider actually knew that it was disclosing: 1) a user's identity; 2) the identity of the video material; and 3) the connection between the two—i.e., that the given user had 'requested or obtained' the given video material." *In re Hulu*, 86 F. Supp. 3d at 1097; *See also Martin v. Meredith Corp.*, No. 22cv4776, 2023 WL 2118074, *4 (S.D.N.Y. Feb. 17, 2023), *appeal filed*, No. 23-412 (2d Cir. Mar. 17, 2023). The SAC makes none of the allegations necessary to show that General Mills knowingly disclosed Plaintiffs PII.

Plaintiffs' failure to allege General Mills "knowingly" disclosed PII to Facebook and Google is also fatal to their claims. *See, e.g., Mollett v. Netflix, Inc.*, No. 11-CV-01629, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012) (dismissing VPPA claim in part because it was unreasonable to infer knowing disclosure of PII from conclusory allegations).

NOTICE OF MOTION AND MOTION TO DISMISS

### 4.    General Mills' disclosure of information was "incident to the ordinary course of business."

Plaintiffs fail to state a claim under the VPPA for the additional reason that General Mills' use of the Facebook Pixel and Google Analytics as alleged in the SAC was undertaken as part of General Mills' ordinary course of business.

There are several exceptions written into the VPPA under which disclosure of PII is permitted, including "if the disclosure is incident to the ordinary course of business of the video tape service provider." *See* 18 U.S.C. § 2710(b)(2)(E). Advertising and marketing fall within the bounds of General Mills' "ordinary course of business" and for General Mills, "this is a lawsuit about online advertising practices, not online videos." *See In re Nickelodeon Consumer Priv. Litig.*, Nos. 12-07829, 13-03755, 13-03729, 13-03757, 13-03731, 13-03756, 2014 WL 3012873, at *8 (D. N.J. July 2, 2014).

The VPPA defines "ordinary course of business" as "debt collection activities, order fulfillment, request processing, and the transfer of ownership," although the term encompasses more than this definition would seem to suggest. The 1988 Senate Judiciary Report on the VPPA describes that the purpose of this particular exception was to "take[] into account that video tape service providers may use third parties in their business operations" and that the exception "allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called 'order fulfillment' and 'request processing.'" S. REP. NO. 100-599, at 12 (1988), *as reprinted in* 1988 U.S.C.C.A.N. at 4342-1, 4342-12.

There is no question that General Mills installed the Facebook Pixel and Google Analytics to improve its marketing. As Plaintiffs allege, "Facebook enables advertisers to identify 'people who have already shown interest in [their] business,' which Facebook calls 'Custom Audiences.' The Custom Audiences tool requires

-17-

1   advertisers to supply user data to Facebook, and most do so via the Facebook

2   Tracking Pixel." (SAC ¶ 13.)

3        Further, Plaintiffs allege that "Google Analytics is 'designed to work together'

4   with other Google Marketing Platform products to help measure, understand and

5   enhance a website's digital marketing." (SAC ¶ 39.) This use of information is

6   contemplated under and permitted by the VPPA.

7        The facts alleged by Plaintiffs are much more akin to those that arose in the

8   case of *Sterk v. Redbox Automated Retail, LLC* than they are to the publication of

9   one's video store rental history. In *Sterk*, the Seventh Circuit Court of Appeals held

10  that Redbox's disclosure of its customers' PII to one of its vendors was permitted

11  under the "ordinary course of business" exception. *See* 770 F.3d 618 (7th Cir. 2014).

12  In that case, Redbox (an automated video rental machine) out-sourced certain

13  customer service functions to a vendor called "Stream," which provided live

14  customer service support to Redbox customers. *Id*. at 621. Redbox in turn provided

15  access to its database of customer information, including PII, to Stream to enable its

16  customer service representatives to assist Redbox customers. *Id*. The court found that

17  the disclosure was permissible and fell within the "ordinary course of business"

18  exception because it was "incident to the request processing function that Stream

19  serves." *Id*. at 626; *see also Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d

20  1045, 1054 (9th Cir. 2015) ("[N]o business is an island and . . . video tape services

21  providers, like many other businesses, 'may use third parties in their business

22  operations . . . .'") (quoting *Sterk*, 770 F.3d at 623).

23       Similarly here, General Mills' disclosure of information to Facebook and

24  Google is incident only to the function that Facebook and Google serve in optimizing

25  General Mills' marketing. Marketing falls within the ordinary course of General

26  Mills' business and so any disclosure of information to a vendor incident to that

27  purpose may not give rise to liability on the part of General Mills. *See* 18 U.S.C. §

28  2710(c)(4).

-18-

**B.      Plaintiffs' Reading of the VPPA is Unconstitutional.**

Plaintiffs' construction of the VPPA is so impermissibly broad as to render the statute unconstitutional. Plaintiffs asks this Court to find any reporting of a visit to a web page that contains a video constitutes a violation of the VPPA. Such a restriction on the display of video materials would advance no legitimate governmental interest and constitute an impermissible regulation of commercial free speech. The First Amendment "protects commercial speech from unwarranted governmental regulation." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571–72 (2011) ("Under a commercial speech inquiry, it is the State's burden to justify its content based law as consistent with the First Amendment."). Applying the VPPA to company's videos about its food products, which are neither "misleading nor related to unlawful activity," would further no "substantial [governmental] interest" and would represent an "excessive" limitation on commercial speech in violation of the First Amendment, which simply "cannot survive." *Cent. Hudson*, 447 U.S. at 564; *see also Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018) ("Restrictions on commercial speech must survive intermediate scrutiny under *Central Hudson* . . . and must not be 'more extensive than is necessary to serve [a substantial government] interest.'" (quoting *Cent. Hudson*, 447 U.S. at 566)).

It is a "cardinal principle . . . beyond debate" that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (citation omitted). Even if we assume that Plaintiffs' widely expansive reading of the VPPA is an "otherwise acceptable construction," it must be rejected as unconstitutional. As part of this avoidance of constitutional doubt, "[t]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from

-19-

unconstitutionality." *Id*. (alteration in original) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)).

If, as Plaintiffs would have the Court conclude, the VPPA restricts sharing information about users' visit to a webpage with a video—even short clips or ads, it would fail to advance any reasonable governmental interests and thereby constitute an impermissible restriction under the First Amendment. Plaintiffs' interpretation of the VPPA contradicts common sense, congressional intent, and fundamental doctrines of constitutional and statutory interpretation. The only reasonable construction of the VPPA that avoids rendering the statute unconstitutionally broad lies in the conclusion that a website with incidental video content is not a video tape service provider engaged in the business of renting, selling, or delivering prerecorded video cassette tapes or similar audio visual materials. In accordance with these principles, this Court should confine the VPPA to its proper scope and reject Plaintiffs' unbounded interpretation of the statute.

## V.    CONCLUSION

For all of the foregoing reasons, this Court should dismiss this case with prejudice on the grounds that, despite several opportunities to amend, Plaintiffs have failed to allege even as single element of their claim.

DATED: August 2, 2023           **PERKINS COIE LLP**

By: */s/ Aaron R. Goldstein*
Aaron R. Goldstein 239423
AGoldstein@perkinscoie.com

Attorneys for Defendant
GENERAL MILLS, INC.

-20-

163164742.4

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for General Mills, Inc., certifies that this

3  brief contains 6,801 words, which complies with the word limit of L.R. 11-6.1.

4

5  DATED: August 2, 2023          **PERKINS COIE LLP**

6

7                                By: */s/ Aaron R. Goldstein*
                                     Aaron R. Goldstein 239423
8                                    AGoldstein@perkinscoie.com

9                                Attorneys for Defendant
                                 GENERAL MILLS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-

163164742.4