## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CARROLL, and REBEKA RODRIGUEZ, individually and on behalf of others similarly situated, Plaintiffs, <br><br> v. <br><br> GENERAL MILLS, INC., a Delaware corporation d/b/a BETTYCROCKER.COM; and DOES 1 through 10, inclusive, Defendants. | CV 23-1746 DSF (MRWx) <br><br> Order GRANTING Defendants' Motion to Dismiss (Dkt. 32) and DENYING Plaintiffs' Request for Judicial Notice (Dkt. 33-1) |

Defendant General Mills, Inc. moves to dismiss Plaintiffs Keith Carroll and Rebeka Rodriguez's Second Amended Class Action Complaint for a Violation of the Video Protection Privacy Act (VPPA). Dkt. 32 (Mot.)  Plaintiffs oppose.  Dkt. 33 (Opp'n).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below the motion is GRANTED.

## I. Background

General Mills is a for-profit business with its principal place of business in Minneapolis, Minnesota.  Dkt. 30 (SAC) ¶ 8.  Betty Crocker

and General Mills are General Mills' brands that are widely available throughout the United States.  Id.

Carroll has purchased and eaten General Mills' products before.  Id. ¶ 77.  He also downloaded General Mills' mobile application at some unknown point in time, which allowed him access to General Mills' website and products.  Id. ¶ 78.  Carroll has a Facebook account.  Id. ¶ 34.  In December 2022, he watched a video titled "Today's Experiment, Carbonation Baking" at https://www.bettycrocker.com/. Id. ¶ 6.  Information identifying Carroll and the video he watched was transmitted by General Mills to Facebook.  Id. ¶ 34.  General Mills uses a Facebook feature called "custom audiences" that enables advertisers like General Mills to identify individuals who have already shown interest in their business.  Id. ¶¶ 13, 34.  This requires the advertisers to supply user data to Facebook.  Id.  User data is supplied to Facebook via the Facebook Tracking Pixel.  Id.  The SAC suggests that General Mills integrated Facebook Tracking Pixel into https://www.bettycrocker.com, where once activated, it captured Carroll's user action and sent a record to Facebook.  Id. ¶¶ 14, 34. Advertisers like General Mills control what data the Facebook Tracking Pixel collects and how it identifies visitors.  Id. ¶¶ 15-16.  When an individual watches a video at https://www.bettycrocker.com/ while logged into Facebook, the various cookies, including the c user cookie, are transmitted to Facebook.  Id. ¶ 24.  The c user cookie contains the individual's Facebook ID.  Id.  When a user has recently logged out of Facebook, a smaller set of cookies is transmitted to Facebook -- including an fr cookie that contains an encrypted Facebook ID and browser identifier.  Id. ¶¶ 25-26.  Carroll's video viewing behavior was thus disclosed to Facebook by General Mills.  Id. ¶ 34.

Plaintiff Rebeka Rodriguez has previously purchased and eaten General Mills' products.  Id. ¶ 77.  She also downloaded General Mills' mobile application at some unknown point in time, which allowed her access to General Mills' website and products.  Id. ¶ 78.  In March 2023, she watched a video titled "LTO Excitement Lucky Cakes" at https://www.generalmillscf.com/.  Id. ¶ 7.  When Rodriguez played the video on the website, her video viewing behavior was disclosed to

Google.  Id. ¶ 44.  Google Analytics, a part of the Google Marketing Platform, collects and transmits website analytics data to Google via tracking tags on a website.  Id. ¶¶ 35-36.  There are tracking tags enabled at https://www.generalmillscf.com/ and General Mills controls what data the tracking tag collects.  Id. ¶¶ 37, 40, 44.  The tracking tags are generally configured to collect data such as IP Address, User Agent String, and Language, as well as "Event Parameter" data, i.e., the interactions, video views, file downloads, and page scrolls.  Id. ¶ 38.  When a video such as "LTO Excitement Lucky Cakes" is viewed on the website, Google logs information about the webpage such as the video title and the URL.  Id. ¶ 41.  A _gid cookie is stored on the browser which is tied to an identifier for a specific Google account.  Id. ¶ 42.  The "LTO Excitement Lucky Cakes" is the sole Youtube video on the webpage and therefore the video details can be confirmed from the data.  Id. ¶ 43.  Rodriguez's video viewing behavior was thus disclosed to Google by General Mills.  Id. ¶ 44.

Plaintiffs filed this nationwide class action alleging a violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 et seq.  The Court previously granted Defendants' Motion to Dismiss, finding that General Mills was not a Video Tape Service Provider.  Dkt. 21 (Order #1).

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true, Produce Pay, Inc. v. Izguerra Produce, Inc., 39 F.4th 1158, 1161 (9th Cir. 2022); and the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  Id. (alteration in original; citation and internal quotation marks omitted).  A complaint must "state a claim to relief

that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief."  <u>Id.</u> at 679 (alteration in original; internal quotation marks and citation omitted).

### III. Discussion

### A.    Request for Judicial Notice

Plaintiffs request that the Court take judicial notice of four documents: the United States of America's Notice of Intervention filed on December 5, 2022 in <u>Stark v. Patreon, Inc.</u>, No. 3:22-cv-03131-JCS, Doc. 49 (N.D. Cal. Dec. 5, 2022); the United States of America's Memorandum in Support of the Constitutional[i]ty of the Video Privacy Protection Act filed on December 5, 2022 <u>Stark v. Patreon, Inc.</u>, No. 3:22-cv-03131-JCS, Doc. 49-1 (N.D. Cal. Dec. 5, 2022); the United States of America's Notice of Intervention filed on June 20, 2023 in <u>Carroll v. Chick-Fil-A, Inc.</u>, No. 4:23-cv-00314-YGR, Doc. 36 (N.D. Cal. June 20, 2023); and the United States of America's Memorandum in Support of the Constitutionality of the Video Privacy Protection Act filed on June 20, 2023 in <u>Carroll v. Chick-Fil-A, Inc.</u>, No. 4:23-cv-00314-YGR, Doc. 36-1 (N.D. Cal. June 20, 2023).  Dkt. 33-1 at 1.

The Court declines to take judicial notice of these documents.  The Court previously declined to take judicial notice of the first two documents.  Order #1 at 4-5.  The Court declines to take judicial notice of all four documents for the same reason.  It is proper to take judicial

notice only of the existence of such documents and not the contents or arguments contained in them. Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc., 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015) ("the Court can only take judicial notice of the existence of those matters of public record . . . but not of the veracity of the arguments and disputed facts contained therein.") (quotation marks omitted). Plaintiffs' arguments in relation to these documents are centered on the content and arguments contained in the briefing. See, e.g., Opp'n at 1, 25. And the mere fact that the United States intervened in another case is irrelevant to whether Plaintiffs have adequately pleaded a cause of action in this case. The Court will not take judicial notice of irrelevant facts. Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (declining to take judicial notice of two City Council Staff Reports "as they are not relevant to the resolution of this appeal.").

The Request for Judicial Notice is DENIED.

## B.    The Video Privacy Protection Act Claim

The Video Privacy Protection Act provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . . ." 18 U.S.C. § 2710(b)(1) (emphasis added). "[I]n order to plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any [consumer]' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." Mollett v. Netflix, Inc., 795 F.3d 1062, 1066 (9th 2015).

As before, the Court finds that Plaintiffs fail to allege even the first prong of a section 2710(b)(1) claim: that Defendants are video tape service providers. Even if the Court were to move past the first prong, Plaintiffs fail at the second prong. Plaintiffs are not consumers.

## 1. General Mills is not a Video Tape Service Provider

A "'video tape service provider' is any person, **engaged in the business**, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). The statute does not cover every company that merely delivers audio visual materials ancillary to its business. It is confined to those engaged specifically *in the business of* providing audio visual materials. "When used in this context, 'business' connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." In re Vizio, Inc., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (quoting various dictionaries). Thus "for the defendant to be 'engaged in the business' of delivering video content, the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." Id. (emphasis added).

Plaintiffs again fail to allege facts adequate to plead that General Mills is *engaged in the business* of delivering, selling, or renting audiovisual material. General Mills is "a company manufacturing and selling cereals, yogurts, cake mixes, dog food, and other products" and it is not engaged in the business of delivering audiovisual material. Order #1 at 6 (quotation marks omitted); see also SAC ¶¶ 77 (Plaintiffs allege that they are consumers of General Mills because "[b]oth Plaintiffs have purchased and eaten Defendant's products before."). Plaintiffs' new allegations attempting to re-cast General Mills as video tape service provider fall short. Plaintiffs added links to various other videos on the General Mills' websites and allege that the production quality is high and that General Mills incurred significant expense in designing its website to host this video content. SAC ¶¶ 46-68. There are also additional allegations that the videos are a "critical marketing channel used by Defendant to attract" customers and Plaintiffs point to a 2008 article where the author said Bettycrocker.com was creating high quality video content to increase traffic to its own website. Id. ¶¶ 46; 72-74. These allegations do no more than show that videos are part of General Mills' marketing and brand awareness. None of this indicates that the videos are profitable in and of themselves and that

they are the business that General Mills is engaged in.  Plaintiffs
attempt to show that the videos are profitable rather than just brand
awareness by alleging that there are paid advertisements on General
Mills' website pages.  <u>Id.</u> ¶ 69.  But this just indicates that General
Mills may be getting money from website visits; it still does not plead
that it is profiting from video views themselves.  Plaintiffs' last
unsuccessful effort is the allegation that General Mills monetizes some
cookbooks, including some audio cookbooks, with a Google shop search
link and Youtube link for the cookbooks.  <u>Id.</u> ¶ 71.  The very fact that
these are not even links to General Mills' own website runs directly
contrary to the idea that General Mills is producing this content as its
particular field of endeavor.  In short, Plaintiffs have failed to
adequately allege that General Mills is a video tape service provider
whose particular field of endeavor is audiovisual material.

### 2.   Plaintiffs are Not Consumers

Even if Plaintiffs had successfully alleged the first prong of a VPPA
claim, they have failed at the next prong.  Plaintiffs are not consumers
under the statute.

For the purposes of the VPPA, a consumer is "any renter, purchaser,
or subscriber of goods or services from a video tape service provider."
18 U.S.C. § 2710(a)(1).  "In the statute's full context, a reasonable
reader would understand the definition of 'consumer' to apply to a
renter, purchaser or subscriber **of audio-visual goods or services,
and not goods or services writ large**."  <u>Carter v. Scripps Networks,
LLC</u>, No. 22-cv-2031, 2023 WL 3061858, at \*6 (S.D.N.Y. Apr. 24, 2023)
(emphasis added).  The use of "renter, purchaser, or subscriber" in this
section of the statute mirrors the language used to define a "video tape
service provider" as one who is in the business of "rental, sale, or
delivery" of audiovisual material.  <u>Compare</u> 18 U.S.C. § 2710(a)(1) <u>with</u>
18 U.S.C. § 2710(a)(4).  The "rental, sale, or delivery" in defining video
tape service provider is cabined to the "rental, sale, or delivery of
**prerecorded video cassette tapes or similar audio visual
materials**."  18 U.S.C. § 2710(a)(4) (emphasis added).  In the context of
the statute, "consumer" is obviously meant to be cabined in the same

way – as a renter, purchaser, or subscriber of prerecorded video cassette tapes or similar audio visual materials.  "[A] customer's non-video transactions play no part."  <u>Carter</u>, 2023 WL 3061858, at *6.  This is further supported by the legislative history.  The 1988 Senate Report notes that the surrounding sections of the statute are drafted

> to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill. For example, **a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products**.

S. Rep. 100-599, at 12 (1988) (emphasis added).

Plaintiffs allege that they are consumers for two different reasons: because they "have purchased and eaten Defendant's products before" and because they "downloaded Defendant's mobile application onto their smartphone devices."   SAC ¶¶ 77-78.  Neither is sufficient.

General Mills' food is an unrelated product and its purchase and use does not make Plaintiffs consumers of audiovisual material.  Similarly, sidestepping the other questions about whether downloading an app constitutes a subscription, Plaintiffs do not plead a connection between the mobile application and General Mills' video content.  For example, they do not allege that they watched the videos on the mobile application.  Plaintiffs do not even allege whether the videos are available on the mobile application.  Plaintiffs have not pleaded facts necessary to establish their status as consumers of General Mills' audiovisual content.

This failure to plead the second prong highlights the issues that Plaintiffs have with the first prong and the fundamental issue with their claim.  Plaintiffs struggle to plead that they rent, purchase, or subscribe to General Mills' audiovisual material because General Mills is not in the business of offering audiovisual material that consumers can rent, purchase, or subscribe to.  If General Mills were in such a

business, Plaintiffs would not be referring to purchases of General Mills' food products to establish themselves as consumers.

Defendant's motion to dismiss for failure to state a claim for relief is GRANTED.

## IV. Conclusion

For the foregoing reasons, General Mills' Motion is GRANTED. In amending their pleadings, Plaintiffs are cautioned to consider carefully all arguments made in the Motion to Dismiss, including the ones not addressed by this Order. Plaintiffs may amend only if they can do so consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure. An amended complaint may be filed and served no later than September 25, 2023. Failure to file an amended complaint by that date will waive Plaintiffs' right to do so and the SAC will be dismissed with prejudice. Plaintiffs must provide a redlined version of the amended complaint to the Court's generic chambers email.

IT IS SO ORDERED.

Date: September 1, 2023

Dale S. Fischer
United States District Judge

9